STATE OF RHODE ISLAND
PROVIDENCE, SC

SUPERIOR COURT

Sovereign Bank,
Plaintiff,

vs.

Reliant Equity Partners, LLC and
Reliant Equity Partners, L.P.,
Defendants.

C. A. No. 08-4294

## VERIFIED COMPLAINT

### PARTIES

1. Plaintiff, Sovereign Bank ("Bank") is a federal savings bank organized and existing under the laws of the United States of America with a place of business at One Financial Plaza, Providence, Rhode Island 02903.

2. Defendant, Reliant Equity Partners, LLC ("Reliant LLC"), upon information and belief, is a Delaware limited liability company with a registered agent located at 2711 Centerville Road, Suite 400, Wilmington, DE.

3. Defendant, Reliant Equity Partners, L.P. ("Reliant L.P."), upon information and belief, is a Delaware limited partnership with a registered agent located at 2711 Centerville Road, Suite 400, Wilmington, DE.

(Reliant LLC and Reliant L.P. are collectively referred to at times as the "Guarantors")

### JURISDICTION

4. Guarantors have contracted intentionally with Bank in the State of Rhode Island by executing and delivering to Bank that certain "Guaranty", as hereinafter defined, which is the subject of the within Verified Complaint and thus have purposefully entered into the State to conduct business. Guarantors have sufficient contacts with the State of Rhode Island for this

Court to exercise personal jurisdiction over each of the Guarantors and the within legal action arises directly from their intentional contacts with Bank within the forum State. In addition, Guarantors have specifically submitted and consented to the personal jurisdiction of this Court in the Guaranty. This Court also has subject matter jurisdiction over this matter pursuant to R.I.G.L. §8-2-14.

## BACKGROUND

### Credit Facilities

5. Bluesky Brands, Inc. ("Bluesky"), The Paragon Gifts Holdings, Inc. ("Holdings"), The Paragon Gifts, Inc. ("Paragon"), Bits & Pieces, Inc. ("B&P"), AB&C Group, Inc. ("AB&C"), National Wildlife Direct, Inc. ("NWD"), Winterthur Direct, Inc. ("Winterthur") (collectively the "Borrowers") and Bank are parties to, inter alia, (i) an Amended and Restated Secured Revolving Credit Note made payable to the Bank in the original principal amount of Ten Million and 00/100 ($10,000,000.00) Dollars, as amended thereafter ("Revolving Note"); (ii) an Amended and Restated Secured Term Note made payable to Bank in the original principal amount of Five Million Seventy-Nine Thousand Eight Hundred Sixty-One and 16/100 ($5,079,861.16) Dollars ("$5M Term Note"); (iii) an Amended and Restated Secured Term Note made payable to Bank in the original principal amount of Four Million Eight Hundred Thousand ($4,800,000) Dollars ("$4M Term Note"); and (iv) a Master Lease Agreement whereby Borrowers leased equipment and other property from Bank ("Lease"). A copy of the Revolving Note and the amendments thereto are collectively attached hereto as Exhibit A. A copy of the $5M Term Note,$4M Term Note and Lease are attached hereto as Exhibit B, Exhibit C and

Exhibit D, respectively. [Revolving Note, $5M Term Note, $4M Term Note and Lease collectively referred to at times as the "Loans"]

6. On or about September 21, 2007, Guarantors executed and delivered, inter alia, to Bank an Amended and Restated Guaranty, as amended thereafter ("Guaranty"), guaranteeing the prompt payment of the Borrowers' obligations under the Loans up to and including the amount of $7,250,000, plus the legal fees and costs incurred by the Bank in connection with the enforcement thereof ("Guaranty Indebtedness"). A copy of the Guaranty and the First Amendment to Amended and Restated Guaranty are collectively attached hereto as Exhibit E.

February 2008 and March 2008 Amendments / Guarantor Representations

7. Borrowers defaulted in their obligations to Bank.

8. On or about February 4, 2008, Borrowers and Bank entered into an Eighth Amendment to Amended and Restated Revolving Credit and Term Loan Agreement and Forbearance Agreement ("Forbearance Agreement"). A copy of the Forbearance Agreement is attached hereto as Exhibit F.

9. In connection with the Forbearance Agreement, on or about February 4, 2008 Borrower and Bank entered into a Fifth Amendment to Amended and Restated Secured Revolving Credit Note. See Exhibit A.

10. In connection with the Forbearance Agreement, on or before February 4, 2008 Guarantors executed and delivered to Bank, inter alia, (i) a First Amendment to Amended and Restated Guaranty (See Exhibit B) and (ii) Consent By Guarantors ("February 2008 Consent"). A copy of the February 2008 Consent is attached hereto as Exhibit G.

11. In connection with the Forbearance Agreement, on or before February 4, 2008 Reliant L.P. by and through its general partner - Reliant LLC represented and certified to the Bank that that it had "Required Capital Commitments" in an amount no less than $3,250,000 ("February 2008 Capital Commitment Certificate"). A copy of the February 2008 Capital Commitment Certificate is attached hereto as Exhibit H. A "Required Capital Commitment" as defined in Section 8 of the Forbearance Agreement and the Guaranty consisted of undrawn capital commitments from its partners which have been committed for the payment of the Guaranty without the satisfaction of any condition, approval or requirement other than the issuance of such capital call to its partners.

12. Consistent with the $3,250,000 capital commitment representation in the February 2008 Capital Commitment Certificate, the Guarantors in the First Amendment to Amended and Restated Guaranty represented and warranted to Bank that Reliant L.P. has capital reserves and undrawn capital commitments of not less than $7,250,000 which have been committed for the payment of the Guaranty, subject to a reduction via payment made to the Bank, i.e. a $4,000,000 cash pledge to Bank ("Pledge") to secure the Guaranty, leaving an undrawn capital commitment of $3,250,000 to pay the Guaranty.

13. On or about March 5, 2008, Borrowers and Bank entered into a Ninth Amendment to Amended and Restated Revolving Credit and Term Loan Agreement ("March 2008 Agreement"). A copy of the March 2008 Agreement is attached hereto as Exhibit I.

14. In connection with the March 2008 Agreement, on or before March 5, 2008, Guarantors executed and delivered to Bank, inter alia, a Consent By Guarantors ("March 2008 Consent"). A copy of the March 2008 Consent is attached hereto as Exhibit J.

15. Pursuant to the February 2008 Consent and the March 2008 Consent, Guarantors reaffirmed their obligations under the Guaranty, waived and released the Bank of any and all claims, defenses, etc. and acknowledged the legal, valid and binding obligations of the Guarantors to Bank under the Guaranty. See Exhibits G and J.

16. Borrowers defaulted in their obligations to the Bank, by, inter alia, failing to make the payments due Bank under the Loans.

17. By letter dated March 18, 2008, the Bank notified Guarantors that Bank had declared an event of default under the Loans, accelerated the entire unpaid principal balance thereunder, plus all accrued interest thereon, and demanded the immediate payment of $7,250,000 from each of the Guarantors under the Guaranty ("March 2008 Demand Letter"). A copy of the March 2008 Demand Letter is attached hereto as Exhibit K.

18. In April 2008, the Bank setoff the funds in the Pledge (i.e. Account Number 47300182780) in the amount of $4,000,962.86 which secured the Guaranty to reduce the Guaranty Indebtedness.

19. As of April 30, 2008 and after applying the Pledge, the outstanding amount of the Guaranty Indebtedness is $3,249,037.14, plus the reasonable attorneys' fees and costs incurred by the Bank in connection with the enforcement of the Guaranty.

20. By letter dated April 30, 2008, the Bank (i) notified Guarantors that Bank had declared an event of default under the Loans, accelerated the entire unpaid principal balance thereunder, plus all accrued interest thereon, and setoff the Pledge in the amount of $4,000,962.86 to reduce the Guaranty Indebtedness; and (ii) demanded from each of the Guarantors the immediate payment of the Guaranty Indebtedness, i.e., $3,249,037.14, plus the

legal fees and costs incurred by the Bank in connection with the enforcement of the Guaranty ("April 2008 Demand Letter"). A copy of the April 2008 Demand Letter is attached hereto as Exhibit L.

21. To date, each of the Guarantors has failed and refused to pay the Guaranty Indebtedness due Bank, defaulted in their respective obligations to the Bank under the Guaranty, and as a result of the Guarantors' failure to pay their debts as they have become due, upon information and belief, the Guarantors are insolvent.

22. In assessing the representations made by the Guarantors to the Bank, the Bank has communicated with certain partners about their capital call commitments. In response, one partner has advised the Bank that it has no further commitment to meet a capital call, while another partner has advised the Bank that Reliant LLC contacted the partners and advised the partners to communicate to the Bank that they have no further capital call commitment in the event that a Bank representative contacted them to inquire into their capital commitments.

23. Upon information and belief, the Guarantors either (a) intentionally misrepresented a material fact to the Bank via, inter alia, the February 2008 Capital Commitment Certificate in knowing that the Bank would rely upon the misrepresentation in entering into the Forbearance Agreement and March 2008 Agreement, and/or (b) is now intentionally attempting to conceal their assets or capital call commitments for the purpose of hindering, delaying and/or defrauding their creditor, the Bank.

24. To date, the Bank has liquidated a substantial portion of the assets of the Borrowers and the Bank's collateral and has reduced the unpaid principal balance under the Loans from approximately $15,200,000 as of March 17, 2008 to approximately $6,000,000. In

doing so, the Bank has acted in a commercially reasonably manner in maximizing the value thereof. Bank is unaware of remaining assets owned by the Borrowers that if liquidated would satisfy the indebtedness owed to Bank under the Loans. The Bank believes that after liquidating the remaining assets of the Borrowers, a deficiency will remain under the Loans and Guaranty in the approximate amount of $4,200,000.

25. All of the Borrowers are insolvent, and have ceased operating their respective businesses. One borrower, namely AB&C Group, Inc. has been petitioned into a federal bankruptcy proceeding in Virginia. Another borrower, namely The Paragon Gifts, Inc. has been petitioned into a state court receivership in the State of Rhode Island, Washington County.

26. Bank fears that unless each of the Guarantors and their officers, agents, servants, employees, and attorneys are restrained, prohibited and enjoined from selling, transferring, disposing of, mortgaging, encumbering, diminishing, surrendering, and/or otherwise placing beyond the reach of the Bank any of their cash, securities, stocks, investments, and accounts, the Bank will never recover the amount of the Guaranty Indebtedness due Bank and will suffer irreparable harm.

<u>COUNT I</u>

(Guaranty as to Reliant LLC)

27. Bank incorporates by reference paragraphs one (1) through twenty-six (26) above as if fully set forth herein.

28. Bank demanded that Reliant LLC pay to Bank the Guaranty Indebtedness due from it under the Guaranty.

29. Reliant LLC failed to pay the Guaranty Indebtedness and defaulted in its obligations to Bank under the Guaranty. The Guaranty Indebtedness is immediately due and payable in full.

WHEREFORE, Bank demands that this Court (i) enter judgment in favor of Bank against Reliant LLC for the Guaranty Indebtedness due under the Guaranty in the amount of $3,249,037.14, plus interest and the reasonable attorneys' fees and costs incurred by the Bank in connection with the enforcement of the Guaranty as provided in the Guaranty; (ii) temporarily, preliminarily and permanently enjoin Reliant LLC from selling, transferring, disposing of, mortgaging, pledging, encumbering, diminishing, surrendering and/or otherwise placing beyond the reach of the Bank any of its cash, securities, stock, investments, and accounts; (iii) award the Bank any other and further relief that this Court deems meet and just.

COUNT II

(Guaranty as to Reliant L.P.)

30. Bank incorporates by reference paragraphs one (1) through twenty-nine (29) above as if fully set forth herein.

31. Bank demanded that Reliant L.P. pay to Bank the Guaranty Indebtedness due from it under the Guaranty.

32. Reliant L.P. failed to pay the Guaranty Indebtedness and defaulted in its obligations to Bank under the Guaranty. The Guaranty Indebtedness is immediately due and payable in full.

WHEREFORE, Bank demands that this Court (i) enter judgment in favor of Bank against Reliant L.P. for the Guaranty Indebtedness due under the Guaranty in the amount of

$3,249,037.14, plus interest and the reasonable attorneys' fees and costs incurred by the Bank in connection with the enforcement of the Guaranty as provided in the Guaranty; (ii) temporarily, preliminarily and permanently enjoin Reliant L.P. from selling, transferring, disposing of, mortgaging, pledging, encumbering, diminishing, surrendering and/or otherwise placing beyond the reach of the Bank any of its cash, securities, stock, investments, and accounts; (iii) award the Bank any other and further relief that this Court deems meet and just.

COUNT III

(Intentional Misrepresentations)

33. Bank incorporates by reference paragraphs one (1) through thirty-two (32) above as if fully set forth herein.

34. The Guarantors are familiar with their capital commitments.

35. In the February 2008 Capital Commitment Certificate and Guaranty, the Guarantors caused to be made and/or published written statements to Bank covering the partners' capital commitments.

36. Upon information and belief, the February 2008 Capital Commitment Certificate and/or Guaranty contained materially false statements regarding substantial capital commitments from the partners.

37. Upon information and belief, the Guarantors caused to be made and/or published the materially false statements in the February 2008 Capital Call Certificate and/or Guaranty intending to induce the Bank to rely thereon in entering into the Forbearance Agreement and the March 2008 Agreement.

38. The Bank justifiably relied upon the materially false statements in entering into the Forbearance Agreement and the March 2008 Agreement.

39. Upon information and belief, the Guarantors caused to be made and/or published the false statements with the intent to deceive the Bank.

40. As a direct and proximate result of the materially false statements described above, Bank has and continues to suffer damages.

WHEREFORE, Bank demands that this Court (i) enter judgment in favor of Bank against Reliant LLC and Reliant L.P., jointly and severally, for the Guaranty Indebtedness due under the Guaranty in the amount of $3,249,037.14, plus interest and the reasonable attorneys' fees and costs incurred by the Bank in connection with the enforcement of the Guaranty as provided in the Guaranty; (ii) temporarily, preliminarily and permanently enjoin Reliant LLC and Reliant L.P. from selling, transferring, disposing of, mortgaging, pledging, encumbering, diminishing, surrendering and/or otherwise placing beyond the reach of the Bank any of its cash, securities, stock, investments, and accounts; (iii) award the Bank any other and further relief that this Court deems meet and just.

[SIGNATURE PAGE FOLLOWS]

VERIFICATION

I have read the statements set forth above in the Verified Complaint and, to the best of my knowledge, the statements are true and correct.

SOVEREIGN BANK

By: ____________________
Bret E. Bokelkamp
Title: Vice President

Subscribed and sworn to before me in person, ____________ on this 19 day of June, 2008

DIANE M. TRITTO NOTARY PUBLIC COMMONWEALTH OF MASSACHUSETTS MY COMM. EXPIRES JULY 27, 2012

____________________
Notary Public
My Commission Expires 7-27-2012

SOVEREIGN BANK
by its attorneys,

____________________
Richard L. Gemma, Esq., #3953
Carl J. Ricci, Esq., #6147
MacAdams Wieck DeLuca & Gemma Incorporated
101 Dyer Street, Suite 400
Providence, RI 02903
(401) 454-8700
(401) 454-8755 (Fax)
Dated: June 23, 2008

G:\Sovereign Bank\Bits & Pieces, Inc\Pleadings\Verified Complaint (Reliant Equity-Final) 061908.doc