**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| SOVEREIGN BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 08-255-T |
| | ) | |
| RELIANT EQUITY PARTNERS, LLC and RELIANT EQUITY PARTNERS, L.P. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES**

Reliant Equity Partners, LLC ("Reliant LLC") and Reliant Equity Partners, L.P. ("Reliant L.P." and together with Reliant LLC, the "Defendants"), by their undersigned counsel, hereby answer Plaintiff Sovereign Bank's Complaint (the "Complaint") as follows:

1. Plaintiff, Sovereign Bank ("Bank") is a federal savings bank organized and existing under the laws of the United States of America with a place of business at One Financial Plaza, Providence, Rhode Island 02903.

**ANSWER:** Defendants admit the allegations contained in paragraph 1.

2. Defendant, Reliant Equity Partners, LLC ("Reliant LLC"), upon information and belief, is a Delaware limited liability company with a registered agent located at 2711 Centerville Road, Suite 400, Wilmington, DE.

**ANSWER:** Defendants admit the allegations contained in paragraph 2.

3. Defendant, Reliant Equity Partners, L.P. ("Reliant L.P."), upon information and belief, is a Delaware limited partnership with a registered agent located at 2711 Centerville Road, Suite 400, Wilmington, DE. (Reliant LLC and Reliant L.P. are collectively referred to at times as the "Guarantors.")

**ANSWER:** Defendants admit the allegations contained in paragraph 3.

4. Guarantors have contracted intentionally with Bank in the State of Rhode Island by executing and delivering to Bank that certain "Guaranty", as hereinafter defined, which is the subject of the within Verified Complaint and thus have purposefully entered into the State to conduct business. Guarantors have sufficient contacts with the State of Rhode Island for this

Court to exercise personal jurisdiction over each of the Guarantors and the within legal action arises directly from their intentional contacts with Bank within the forum State. In addition, Guarantors have specifically submitted and consented to the personal jurisdiction of this Court in the Guaranty. This Court also has subject matter jurisdiction over this matter pursuant to R.I.G.L. § 8-2-14.

**ANSWER:** Defendants admit only that Carr Preston purported to execute the "Guaranty," as defined in the Complaint, on behalf of Defendants, and that the Guaranty is the subject of the Bank's Complaint. The remaining allegations contained in paragraph 4 consist of legal conclusions, to which no responsive pleading is required. To the extent a further response is required, the Defendants deny the remaining allegations contained in paragraph 4.

5. Bluesky Brands, Inc. ("Bluesky"), The Paragon Gifts Holdings, Inc. ("Holdings"), The Paragon Gifts, Inc. ("Paragon"), Bits & Pieces, Inc. ("B&P"), AB&C Group, Inc. ("AB&C"), National Wildlife Direct, Inc. ("NWD"), Winterthur Direct, Inc. ("Winterthur") (collectively the "Borrowers") and Bank are parties to, *inter alia*, (i) an Amended and Restated Secured Revolving Credit Note made payable to the Bank in the original principal amount of Ten Million and 00/100 ($10,000,000.00) Dollars, as amended thereafter ("Revolving Note"); (ii) an Amended and Restated Secured Term Note made payable to Bank in the original principal amount of Five Million Seventy-Nine Thousand Eight Hundred Sixty-One and 16/100 ($5,079,861.16) Dollars ("$5M Term Note"); (iii) an Amended and Restated Secured Term Note made payable to Bank in the original principal amount of Four Million Eight Hundred Thousand ($4,800,000) Dollars ("$4M Term Note"); and (iv) a Master Lease Agreement whereby Borrowers leased equipment and other property from Bank ("Lease"). A copy of the Revolving Note and the amendments thereto are collectively attached hereto as Exhibit A. A copy of the $5M Term Note, $4M Term Note and Lease are attached hereto as Exhibit B, Exhibit C and Exhibit D, respectively. [Revolving Note, $5M Term Note, $4M Term Note and Lease collectively referred to at times as the "Loans"]

**ANSWER:** Defendants admit that the Borrowers and Bank are parties to the Revolving Note, as amended and attached to the Complaint as Exhibit A. The Defendants admit that copies of the $5M Term Note, the $4M Term Note, and the Lease are attached to the Complaint as Exhibit B, Exhibit C, and Exhibit D, respectively. Defendants deny the remaining allegations contained in paragraph 5.

6. On or about September 21, 2007, Guarantors executed and delivered, *inter alia,* to Bank an Amended and Restated Guaranty, as amended thereafter ("Guaranty"), guaranteeing the

prompt payment of the Borrowers' obligations under the Loans up to and including the amount of $7,250,000, plus the legal fees and costs incurred by the Bank in connection with the enforcement thereof ("Guaranty Indebtedness"). A copy of the Guaranty and the First Amendment to Amended and Restated Guaranty are collectively attached hereto as Exhibit E.

**ANSWER:** Defendants admit only that Carr Preston purported to execute the Guaranty on or about September 21, 2007 and the Guaranty and the First Amendment to Amended and Restated Guaranty are attached to the Complaint as Exhibit E. Defendants further answer that the Guaranty and the First Amendment to Amended and Restated Guaranty are the best evidence of their terms. To the extent any further response is required, Defendants deny the remaining allegations contained in paragraph 6.

7. Borrowers defaulted in their obligations to Bank.

**ANSWER:** Paragraph 7 consists of a legal conclusion to which no responsive pleading is required. To the extent a further response is required, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 7.

8. On or about February 4, 2008, Borrowers and Bank entered into an Eighth Amendment to Amended and Restated Revolving Credit and Term Loan Agreement and Forbearance Agreement ("Forbearance Agreement"). A copy of the Forbearance Agreement is attached hereto as Exhibit F.

**ANSWER:** Defendants admit the allegations contained in paragraph 8.

9. In connection with the Forbearance Agreement, on or about February 4, 2008, Borrowers and Bank entered into a Fifth Amendment to Amended and Restated Secured Revolving Credit Note. See Exhibit A.

**ANSWER:** Defendants admit the allegations contained in paragraph 9.

10. In connection with the Forbearance Agreement, on or before February 4, 2008, Guarantors executed and delivered to Bank, *inter alia*, (i) a First Amendment to Amended and Restated Guaranty (*see* Exhibit B) and (ii) Consent By Guarantors ("February 2008 Consent"). A copy of the February 2008 Consent is attached hereto as Exhibit G.

**ANSWER:** Defendants admit only that Thomas Darden purported to execute the First Amendment to Amended and Restated Guaranty on behalf of Defendants, that Defendants executed the February 2008 Consent, and that a copy of the February 2008 Consent is attached to the Complaint as Exhibit G.

11. In connection with the Forbearance Agreement, on or before February 4, 2008, Reliant L.P. by and through its general partner - Reliant LLC represented and certified to the Bank that that it had “Required Capital Commitments” in an amount no less than $3,250,000 (“February 2008 Capital Commitment Certificate”). A copy of the February 2008 Capital Commitment Certificate is attached hereto as Exhibit H. A “Required Capital Commitment” as defined in Section 8 of the Forbearance Agreement and the Guaranty consisted of undrawn capital commitments from its partners which have been committed for the payment of the Guaranty without the satisfaction of any condition, approval or requirement other than the issuance of such capital call to its partners.

**ANSWER:** Defendants admit that Reliant L.P. executed the "February 2008 Capital Commitment Certificate." Defendants further answer that the February 2008 Capital Commitment Certificate is the best evidence of its terms. Defendants admit that a copy of that document is attached to the Complaint as Exhibit H. Defendants deny the remaining allegations contained in paragraph 11.

12. Consistent with the $3,250,000 capital commitment representation in the February 2008 Capital Commitment Certificate, the Guarantors in the First Amendment to Amended and Restated Guaranty represented and warranted to Bank that Reliant L.P. has capital reserves and undrawn capital commitments of not less than $7,250,000 which have been committed for the payment of the Guaranty, subject to a reduction via payment made to the Bank, i.e., a $4,000,000 cash pledge to Bank (“Pledge”) to secure the Guaranty, leaving an undrawn capital commitment of $3,250,000 to pay the Guaranty.

**ANSWER:** Defendants answer that the First Amendment to Amended and Restated Guaranty is the best evidence of its terms. To the extent any further response is required, Defendants deny the allegations contained in paragraph 12.

13. On or about March 5, 2008, Borrowers and Bank entered into a Ninth Amendment to Amended and Restated Revolving Credit and Term Loan Agreement ("March 2008 Agreement"). A copy of the March 2008 Agreement is attached hereto as Exhibit I.

**ANSWER:** Defendants admit the allegations contained in paragraph 13.

14. In connection with the March 2008 Agreement, on or before March 5, 2008, Guarantors executed and delivered to Bank, *inter alia*, a Consent By Guarantors ("March 2008 Consent"). A copy of the March 2008 Consent is attached hereto as Exhibit J.

**ANSWER:** Defendants admit the allegations contained in paragraph 14.

15. Pursuant to the February 2008 Consent and the March 2008 Consent, Guarantors reaffirmed their obligations under the Guaranty, waived and released the Bank of any and all claims, defenses, etc. and acknowledged the legal, valid and binding obligations of the Guarantors to Bank under the Guaranty. *See* Exhibits G and J.

**ANSWER:** Defendants answer that the February 2008 Consent and the March 2008 Consent are the best evidence of their terms. Defendants further answer that paragraph 15 consists of legal conclusions to which no responsive pleading is required. To the extent a further response is required, Defendants deny the allegations contained in paragraph 15.

16. Borrowers defaulted in their obligations to the Bank, by, *inter alia*, failing to make the payments due Bank under the Loans.

**ANSWER:** Paragraph 16 consists of a legal conclusion to which no responsive pleading is required. To the extent a further response is required, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 16.

17. By letter dated March 18, 2008, the Bank notified Guarantors that Bank had declared an event of default under the Loans, accelerated the entire unpaid principal balance thereunder, plus all accrued interest thereon, and demanded the immediate payment of $7,250,000 from each of the Guarantors under the Guaranty ("March 2008 Demand Letter"). A copy of the March 2008 Demand Letter is attached hereto as Exhibit K.

**ANSWER:** Defendants admit only that they received the March 2008 Demand Letter, the contents of which are the best evidence of its terms. Responding further, Defendants deny that they owe any amount to the Bank under the Guaranty.

18. In April 2008, the Bank setoff the funds in the Pledge (i.e., Account Number 47300182780) in the amount of $4,000,962.86 which secured the Guaranty to reduce the Guaranty Indebtedness.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 18.

19. As of April 30, 2008 and after applying the Pledge, the outstanding amount of the Guaranty Indebtedness is $3,249,037.14, plus the reasonable attorneys' fees and costs incurred by the Bank in connection with the enforcement of the Guaranty.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 19. Responding further, Defendants deny that they owe any amount to the Bank in connection with the purported enforcement of the Guaranty.

20. By letter dated April 30, 2008, the Bank (i) notified Guarantors that Bank had declared an event of default under the Loans, accelerated the entire unpaid principal balance thereunder, plus all accrued interest thereon, and setoff the Pledge in the amount of $4,000,962.86 to reduce the Guaranty Indebtedness; and (ii) demanded from each of the Guarantors the immediate payment of the Guaranty Indebtedness, i.e., $3,249,037.14, plus the legal fees and costs incurred by the Bank in connection with the enforcement of the Guaranty ("April 2008 Demand Letter"). A copy of the April 2008 Demand Letter is attached hereto as Exhibit L.

**ANSWER:** Defendants admit only that they received the April 2008 Demand Letter, the contents of which are the best evidence of its terms. Responding further, Defendants deny that they owe any amount to the Bank in connection with the purported enforcement of the Guaranty.

21. To date, each of the Guarantors has failed and refused to pay the Guaranty Indebtedness due Bank, defaulted in their respective obligations to the Bank under the Guaranty,

and as a result of the Guarantors' failure to pay their debts as they have become due, upon information and belief, the Guarantors are insolvent.

**ANSWER:** Defendants admit only that they have not paid the purported Guaranty Indebtedness to the Bank. Defendants deny the remaining allegations contained in paragraph 21.

22. In assessing the representations made by the Guarantors to the Bank, the Bank has communicated with certain partners about their capital call commitments. In response, one partner has advised the Bank that it has no further commitment to meet a capital call, while another partner has advised the Bank that Reliant LLC contacted the partners and advised the partners to communicate to the Bank that they have no further capital call commitment in the event that a Bank representative contacted them to inquire into their capital commitments.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 22.

23. Upon information and belief, the Guarantors either (a) intentionally misrepresented a material fact to the Bank via, *inter alia*, the February 2008 Capital Commitment Certificate in knowing that the Bank would rely upon the misrepresentation in entering into the Forbearance Agreement and March 2008 Agreement, and/or (b) is now intentionally attempting to conceal their assets or capital call commitments for the purpose of hindering, delaying and/or defrauding their creditor, the Bank.

**ANSWER:** Paragraph 23(a) consists of a legal conclusion to which no responsive pleading is required. To the extent a further response is required, Defendants deny the allegations contained in paragraph 23(a). Defendants deny the allegations contained in paragraph 23(b).

24. To date, the Bank has liquidated a substantial portion of the assets of the Borrowers and the Bank's collateral and has reduced the unpaid principal balance under the Loans from approximately $15,200,000 as of March 17, 2008 to approximately $6,000,000. In doing so, the Bank has acted in a commercially reasonably manner in maximizing the value thereof. Bank is unaware of remaining assets owned by the Borrowers that if liquidated would satisfy the indebtedness owed to Bank under the Loans. The Bank believes that after liquidating the remaining assets of the Borrowers, a deficiency will remain under the Loans and Guaranty in the approximate amount of $4,200,000.

**ANSWER:** Defendants deny that the Bank has acted in a commercially reasonable manner and that the Bank is unaware of remaining assets owned by the Borrowers that if liquidated would satisfy the indebtedness owed to the Bank under the Loans. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 24.

25. All of the Borrowers are insolvent, and have ceased operating their respective businesses. One borrower, namely AB&C Group, Inc. has been petitioned into a federal bankruptcy proceeding in Virginia. Another borrower, namely The Paragon Gifts, Inc. has been petitioned into a state court receivership in the State of Rhode Island, Washington County.

**ANSWER:** Defendants admit that the Borrowers have ceased operating their respective businesses and that The Paragon Gifts, Inc. was petitioned into a state court receivership in the State of Rhode Island, Washington County. Borrowers lack knowledge or information sufficient to admit or deny whether the Borrowers are insolvent. Defendants deny the remaining allegations contained in paragraph 25.

26. Bank fears that unless each of the Guarantors and their officers, agents, servants, employees, and attorneys are restrained, prohibited and enjoined from selling, transferring, disposing of, mortgaging, encumbering, diminishing, surrendering, and/or otherwise placing beyond the reach of the Bank any of their cash, securities, stocks, investments, and accounts, the Bank will never recover the amount of the Guaranty Indebtedness due Bank and will suffer irreparable harm.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 26. Defendants further answer that there is no factual or legal basis to restrain, prohibit and enjoin them from selling, transferring, disposing of, mortgaging, encumbering, diminishing, surrendering, and/or otherwise placing beyond the reach of the Bank any of their assets.

**COUNT I**
**(Guaranty as to Reliant LLC)**

27. Bank incorporates by reference paragraphs one (1) through twenty-six (26) above as if fully set forth herein.

**ANSWER:** Defendants incorporate by reference their answers to paragraphs 1 through 26.

28. Bank demanded that Reliant LLC pay to Bank the Guaranty Indebtedness due from it under the Guaranty.

**ANSWER:** Reliant LLC admits only that it has received a demand from the Bank to pay the purported Guaranty Indebtedness.

29. Reliant LLC failed to pay the Guaranty Indebtedness and defaulted in its obligations to Bank under the Guaranty. The Guaranty Indebtedness is immediately due and payable in full.

**ANSWER:** Reliant LLC admits only that it has not paid the purported Guaranty Indebtedness to the Bank. Reliant LLC denies the remaining allegations contained in paragraph 29.

**COUNT II**
**(Guaranty as to Reliant L.P.)**

30. Bank incorporates by reference paragraphs one (1) through twenty-nine (29) above as if fully set forth herein.

**ANSWER:** Defendants incorporate by reference their answers to paragraphs 1 through 29.

31. Bank demanded that Reliant L.P. pay to Bank the Guaranty Indebtedness due from it under the Guaranty.

**ANSWER:** Reliant L.P. admits only that it received a demand from the Bank to pay the purported Guaranty Indebtedness.

32. Reliant L.P. failed to pay the Guaranty Indebtedness and defaulted in its obligations to Bank under the Guaranty. The Guaranty Indebtedness is immediately due and payable in full.

**ANSWER:** Reliant L.P. admits only that it has not paid the purported Guaranty Indebtedness to the Bank. Reliant L.P. denies the remaining allegations contained in paragraph 32.

**COUNT III**
**(Intentional Misrepresentations)**

33. Bank incorporates by reference paragraphs one (1) through thirty-two (32) above as if fully set forth herein.

**ANSWER:** Defendants incorporate by reference their answers to paragraphs 1 through 32.

34. The Guarantors are familiar with their capital commitments.

**ANSWER:** Defendants admit the allegations contained in paragraph 34.

35. In the February 2008 Capital Commitment Certificate and Guaranty, the Guarantors caused to be made and/or published written statements to Bank covering the partners' capital commitments.

**ANSWER:** Defendants deny the allegations contained in paragraph 35.

36. Upon information and belief, the February 2008 Capital Commitment Certificate and/or Guaranty contained materially false statements regarding substantial capital commitments from the partners.

**ANSWER:** Defendants deny the allegations contained in paragraph 36.

37. Upon information and belief, the Guarantors caused to be made and/or published the materially false statements in the February 2008 Capital Call Certificate and/or Guaranty intending to induce the Bank to rely thereon in entering into the Forbearance Agreement and the March 2008 Agreement.

**ANSWER:** Defendants deny the allegations contained in paragraph 37.

38. The Bank justifiably relied upon the materially false statements in entering into the Forbearance Agreement and the March 2008 Agreement.

**<u>ANSWER</u>:** Paragraph 38 consists of a legal conclusion to which no responsive pleading is required. To the extent a further response is required, Defendants deny the allegations contained in paragraph 38.

39. Upon information and belief, the Guarantors caused to be made and/or published the false statements with the intent to deceive the Bank.

**<u>ANSWER</u>:** Defendants deny the allegations contained in paragraph 39.

40. As a direct and proximate result of the materially false statements described above, Bank has and continues to suffer damages.

**<u>ANSWER</u>:** Paragraph 40 consists of a legal conclusion to which no responsive pleading is required. To the extent a further response is required, Defendants deny the allegations contained in paragraph 40.

**FIRST AFFIRMATIVE DEFENSE**[1]
**(Failure to Dispose of Collateral in a Commercially Reasonable Manner)**

1. Defendants are "Debtors" and/or "Obligors" as defined in R.I. GEN. LAWS § 6A-9-102(28) and (59). As such, the Bank owed Defendants a duty of care in administering the Loans.

2. By operation of R.I. GEN. LAWS § 6A-9-610(b), after the Borrowers defaulted on their obligations to the Bank under the Loan Agreement and/or Forbearance Agreement, the Bank was required to act in a commercially reasonable manner in connection with any disposition of its collateral (*i.e.*, substantially all of the Borrowers' assets).

3. Pursuant to R.I. GEN. LAWS § 6A-602(7), Defendants, as debtors and/or obligors could not waive or vary the Bank's obligation to dispose of its collateral in a commercially reasonable manner.

4. Upon information and belief, on or about March 12, 2008, the Bank caused the Borrowers' loan to be transferred internally to the Bank's workout group.

5. Despite the Borrowers' repeated requests to discuss ongoing operations or an orderly liquidation to maximize the value of their assets, the Bank steadfastly refused to engage in such discussions, but rather "stonewalled" the Borrowers.

6. On March 13, 2008, the Bank allowed the Borrowers' employees with direct deposit to be paid.

7. However, on the very next day, March 14, 2008, the Bank swept the Borrowers' bank accounts at the Bank, causing the Borrowers to have to cease operations in an unplanned fashion. The Bank's action also caused the Borrowers not to have sufficient funds to pay their employee payroll that was due that day for the prior two weeks' service.

---

[1] Capitalized terms not otherwise defined in these Affirmative Defenses shall have the meanings ascribed to them in the Complaint.

8. As a result of the abrupt and unexpected shutdown of the Borrowers' business operations, the value of the Bank's collateral decreased substantially.

9. To salvage the remaining value of their assets and to obtain payment of all unpaid payroll obligations of its employees, the Borrowers entered into an agreement with the Bank on or about March 27, 2008 that allowed the Bank to take over the liquidation of the Borrowers' collateral.

10. Instead of conducting the liquidation of the Borrowers' collateral in an orderly and commercially reasonable manner, the Bank failed to act swiftly to take control of all of the Borrowers' assets and have them liquidated, leaving the Borrowers in a chaotic state.

11. In addition, upon information and belief, the Bank sold the Borrowers' primary asset – B&P – for less than the Borrowers had been offered for it just weeks beforehand.

12. The Bank controlled the disposition of its collateral and the Bank failed to act in a commercially reasonable manner in connection with the disposition of its collateral in violation of R.I. GEN. LAWS § 6A-9-610(b).

13. In addition, the Bank breached its duty of care and negligently failed to administer the Loans, thereby markedly reducing the Bank's recovery in connection with the disposition of its collateral.

14. Had the Bank exercised due care and disposed of its collateral in a commercially reasonable manner, the Borrowers' indebtedness to the Bank would have been significantly reduced and/or eliminated entirely.

15. Based upon the foregoing, the Court should find that the Guaranty and the First Amendment to Amended and Restated Guaranty are unenforceable against Defendants and Defendants should be relieved of any of their purported obligations thereunder.

**SECOND AFFIRMATIVE DEFENSE**
**(Misrepresentation / Failure to Convey Adverse Information)**

1 In early 2008, the Bank required the Defendants to make a $4,000,000 cash pledge to the Bank, and Reliant L.P. to commit an additional $500,000 to the Borrowers. The continued funding served, among other purposes, to provide Bluesky with additional time to secure letters of intent for the purchase of substantially all of B&P's assets.

2 On February 4, 2008, the Borrowers and the Bank entered into the Forbearance Agreement and a Fifth Amendment to Amended and Restated Secured Revolving Credit Note, pursuant to which, among other things, (a) the Bank agreed to extend the maturity dates of the Loans to March 15, 2008, and (b) the Bank required the Borrowers to retain an investment banker to explore strategic options, including, without limitation, B&P's sale. The Bank led Defendants and Bluesky to believe that it would have access to an additional $500,000. However, at the eleventh hour just prior to executing the Forbearance Agreement, the Bank unilaterally amended the Borrowing Base in the Forbearance Agreement. As a result, the Bank further constrained the Borrowers' access to cash by, among other things, immediately applying the $500,000 committed by Reliant L.P. against the outstanding indebtedness owed by the Borrowers instead of giving the Borrowers access to that cash. As a result, the value of the Borrowers' assets was significantly reduced due to, among other things, increased public creditor pressure.

3. The Bank never disclosed to Defendants its intention to apply Reliant L.P.'s $500,000 commitment to the balance of the Borrowers' obligations to the Bank. As of February 4, 2008 (the date of the First Amendment to Amended and Restated Guaranty), Defendants reasonably believed that the Borrowers' would be given access to that cash. Had Defendants known the Bank's true intentions, they may have (a) refused any further guaranty, (b) refused to

advance $500,000 to the Borrowers' and/or (c) demanded that such amount further reduce any purported liability under the Guaranty or First Amendment to Amended and Restated Guaranty.

**THIRD AFFIRMATIVE DEFENSE**
**(Setoff)**

1. Based upon the facts set forth in Defendants' Second Affirmative Defense, Defendants should be entitled to setoff the $500,000 they advanced to the Borrowers against their purported liability under the Guaranty and First Amendment to Amended and Restated Guaranty.

2. In addition, the Bank has yet to complete its liquidation of its collateral and, upon information and belief, is continuing its efforts in that regard. Therefore, Defendants should be entitled to setoff all of the Bank's further recoveries on the Loans against the Defendants' purported liability under the Guaranty and First Amendment to Amended and Restated Guaranty.

*(remainder of page intentionally left blank)*

Dated: August 4, 2008

Respectfully submitted,

**RELIANT EQUITY PARTNERS, LLC and RELIANT EQUITY PARTNERS, L.P.**

By: /s/ Joseph V. Cavanagh, Jr.____________
One of their attorneys

Joseph V. Cavanagh, Jr. #1139
Karen A. Pelczarski #3357
Mary Cavanagh Dunn #6712
BLISH & CAVANAGH, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
Telephone: (401) 831-8900
Facsimile: (401) 751-7542
jvc@blishcavlaw.com
kap@blishcavlaw.com
mcd@blishcavlaw.com

-and-

David M. Neff
Brian A. Audette
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, Illinois 60603
Telephone: (312) 324-8400
Facsimile: (312) 324-9400
dneff@perkinscoie.com
baudette@perkinscoie.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of August, 2008, a copy of the above Defendants' Answer And Affirmative Defenses was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants:

**Via First Class Mail**

Richard L. Gemma, Esq.
Carl J. Ricci, Esq.
MacAdams Wieck DeLuca & Gemma Incorporated
101 Dyer Street, Suite 400
Providence, RI 02903

/s/ Joseph V. Cavanagh, Jr.